**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

LUIS DAVID MORALES,

Petitioner,

v. No. 2:26-cv-00596-DHU-DLM

WARDEN, Otero County Processing Center; MARY DE ANDA-YBARRA, Field Office Director of Enforcement and Removal Operations, El Paso Field Office, Immigration and Customs Enforcement; TODD LYONS, Acting Director Immigration and Customs Enforcement; KRISTI NOEM, Secretary, U.S. Department of Homeland Security; and PAMELA BONDI, U.S. Attorney General,

Respondents.

**ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS**

THIS MATTER is before the Court on Petitioner Luis David Morales' *pro se* Petition for Writ of Habeas Corpus ("Habeas Petition"). Doc. 1. Petitioner alleges that his re-detention without bond review, i.e., a hearing, violates the procedural protections of the Due Process Clause of the Fifth Amendment. *Id.* at 2. [1] He asks this Court to order Respondents to immediately release him from custody. *Id.* Having considered the parties' briefs and the relevant law, the Court **GRANTS** Petitioner Luis David Morales' Petition for Writ of Habeas Corpus.

---

[1] Petitioner also argues that Respondents have violated the substantive protections of the Due Process Clause. *See id.* (arguing that his prolonged detention violates his due process rights). However, because the Court grants Petitioner's Habeas Petition on his procedural due process claim, the Court "decline[s] to address th[is] remaining claim[] of error." *Scott v. Mullin*, 303 F.3d 1222, 1232 (10th Cir. 2002).

## I.
## BACKGROUND

Because the parties' briefing contains limited facts, the Court provides the following limited factual background:

1. Petitioner Luis David Morales is a native and citizen of Nicaragua who entered the United States in 2014 as an unaccompanied minor. *Id.* at 2.
2. At some point after his entry, Petitioner was detained by immigration officials, and transferred to the Office of Refugee Resettlement ("ORR"). *See id.* at 15.
3. On July 31, 2014, ORR released Petitioner from immigration custody to his mother. *Id.* The statute that governs the detention of unaccompanied minors encountered at the border, the Trafficking Victims Protection and Reauthorization Act ("TVPRA"), provides that, in making custody determinations, ORR should consider "danger to self, danger to the community, and risk of flight." 8 U.S.C. § 1232(c)(2)(A). In releasing him, ORR determined that Petitioner was not a danger to the community or a flight risk. *See Saravia v. Sessions*, 280 F. Supp. 3d 1168, 1176, 1178 (N.D. Cal. 2017) ("ORR may release the minor to a "sponsor" . . . so long as the minor is not dangerous . . . Release [therefore] reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk.").
4. Following his release, Petitioner established a life in the United States. He lived with his mother, stepfather, and sister. *Id.* at 17, 27. He became a father. *Id.* at 2. He also became the primary caregiver for his ill grandmother. *Id.*
5. Approximately eleven years later, on June 23, 2025, Petitioner was detained by Immigration and Customs Enforcement ("ICE"). *Id.*
6. While detained, Petitioner submitted a custody re-determination request. *Id.* at 3.

7. On August 21, 2025, Petitioner was provided with a bond re-determination hearing at the El Paso SPC Immigration Court. *Id.* at 3-4. The Immigration Judge ("IJ") took no action. *Id.* at 3.

8. Petitioner was subsequently transferred to the Otero County Processing Center in Chaparral, New Mexico, where he remains detained. *Id.* at 1, 2.

On February 26, 2026, Petitioner filed a *pro se* Habeas Petition. Construed liberally, the Court understands Petitioner's argument to be that his re-detention without bond review, i.e., a hearing, violates the procedural protections of the Due Process Clause of the Fifth Amendment. *Id.* at 2; *see also Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) ("A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers."). He asks this Court to order Respondents to immediately release him from custody, or, in the alternative, order his Respondents to release him on bond, parole, or on his own recognizance. *Id.*

On March 3, 2026, the Court entered an Order to Show Cause ordering Respondents to respond to the Habeas Petition within ten (10) business days. Doc. 11.

On March 12, 2026, Respondents filed their response to the Habeas Petition. Doc. 13. In their response, Respondents acknowledge that Petitioner is subject to the detention provisions of §§ 1225 or 1226. *Id.* at 1-2. Respondents' position is that Petitioner is subject to mandatory detention under § 1225(b) based on the plain language of the statute. *Id.* at 2. However, Respondents also acknowledge that this Court reached the opposite conclusion in *Requejo Roman v. Castro*, 816 F.Supp.3d 1267 (D.N.M. 2026). *Id.* Respondents also concede that the facts of this case "are not materially distinguishable [from *Requejo Roman*] for purposes of the Court's decision on the legal issue of which statutory provision authorizes Petitioner's

detention." *Id.* They further concede that the legal issues in this case are similar to the issues addressed by this Court in *Vega Uribe v. Noem*, No. 2:25-cv-01139-DHU-KRS, 2026 WL 127621 (D.N.M. Jan. 16, 2026). *Id.* at 2 n. 1. Respondents do not address Petitioner's argument that his re-detention violates his procedural due process rights.

On March 27, 2026, Petitioner filed a reply. Doc. 14. In his reply, Petitioner reiterates his argument that his re-detention violates his due process rights. *Id.* at 1. He specifically argues that he was re-detained without any process and without the opportunity to be heard. *Id.*

On May 5, 2026, Petitioner filed a second reply, which addresses, in relevant part, whether Petitioner is subject to the detention provisions of §§ 1225 or 1226. Doc. 15. Petitioner argues that § 1225 does not apply because he entered in the United States in 2014 as an unaccompanied minor, was processed and released, and had lived in the United States for over a decade when he was detained. *Id.* at 2.

Also, on May 5, 2026, Petitioner filed an Emergency Motion for Immediate Release. Doc. 16.

## II.
## LEGAL STANDARDS

Habeas relief is available when a person "is in custody in violation of the Constitution or laws or treaties of the United States[.]" 28 U.S.C. § 2241(c)(3). Petitioner seeks habeas relief, arguing that he is being unlawfully detained in violation of the Due Process Clause and the INA.

The Fifth Amendment's Due Process Clause prohibits the Government from depriving any person of liberty without due process of law. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis*, 533 U.S. 678, 690, 121 S.Ct. 2491 (2001). The Due Process Clause's

protections extend to all persons in the United States, including noncitizens, "whether their presence here is lawful, unlawful, temporary, or permanent." *Id.* at 693.

## III.
## DISCUSSION

### A. Petitioner's Re-Detention Without a Pre-Deprivation Hearing Violated His Due Process Rights

Petitioner argues that his re-detention violates the procedurals protections of the Due Process Clause. Doc. 1 at 2; Doc. 14 at 1. Courts analyze due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivations of that protected liberty interest accords with the Constitution. *See Ky. Dep't of Corrections v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904 (1989).

1. Petitioner Possesses a Protected Liberty Interest

Turning to the first step—whether Petitioner possesses a protected liberty interest—this Court finds that Petitioner has a protected liberty interest in his release from immigration custody. Courts have resolved the issue of whether a conditional release rises to the level of a protected liberty interest by comparing the release in the case to the liberty interest in parole in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593 (1972). *See Gonzalez-Fuentes v. Molina*, 607 F.3d 864, 887 (1st Cir. 2010). Like the parole discussed in *Morrissey*, Petitioner's release from immigration custody enabled him "to do a wide range of things," including to "be with family." 408 U.S. at 482. Indeed, Petitioner was released from immigration custody in July 2014. Doc. 1 at 15. He lived with his mother, stepfather, and sister. *Id.* at 17, 27. He became a father. *Id.* at 2. He also became the primary caregiver for his ill grandmother. *Id.*

This Court has previously found that an unaccompanied minor released by ORR acquires a liberty interest once released from immigration detention. *See Garcia Domingo v. Castro*, 806 F.Supp.3d 1246, 1252 (D.N.M. 2025) (Urias, J.) (at the TRO stage, finding that a petitioner released by ORR demonstrated a substantial likelihood of success on his claim that he possessed a protected liberty interest in release from detention). Neither Respondents nor the Court can identify any factual distinctions in this case that warrant a different conclusion with respect to this Petitioner's liberty interest.

2. A Pre-Deprivation Hearing Was Required Before Petitioner Was Re-Detained

Having found that Petitioner possesses a protected liberty interest, the Court next examines what process is necessary to ensure any deprivation of that protected interest accords with the Constitution. To make this determination, the Court considers the three factors outlined in *Mathews v. Eldridge*: 1) "the private interest that will be affected by the official action," 2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards," and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335, 96 S.Ct. 893 (1976).

Turning to the first *Mathews* factor, the Court finds that Petitioner has a significant private interest in remaining free from detention after being released from immigration custody. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the [Due Process] Clause protects." *Zadvydas*, 533 U.S. at 690. As mentioned previously, Petitioner was out of immigration custody since July 2014 before being re-detained, during which time his interest in release grew stronger as he lived freely and

presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. His private interest in freedom from detention is therefore substantial.

With respect to the second *Mathews* factor, the Court also finds that the risk of erroneous deprivation in this case is considerable, particularly here where ICE previously released Petitioner and has not shown a change in circumstances or otherwise explained why re-detention is necessary. A pre-deprivation hearing would have likely attenuated this risk, but Respondents provided no such hearing to Petitioner before re-detaining him.

Finally, the Court finds that the third *Mathews* factor favors Petitioner as well. Respondents' interest in placing Petitioner in detention absent some reason for doing so is low. Moreover, requiring a pre-deprivation hearing does not undermine the Government's interest in enforcing its immigration laws; it merely ensures its enforcement tactics comport with due process. Further, the effort and costs of providing Petitioner this simple procedural safeguard is minimal.

On balance, the Court finds that under the three *Mathews* factors, Petitioner should have received a pre-deprivation hearing prior to being re-detained.

**B. Petitioner's Ongoing Detention Without a Bond Hearing Is Also Unlawful**

Given the Court's finding that due process requires Petitioner's release, the Court need not make a determination regarding Petitioner's detention authority and entitlement to a bond hearing. However, it is worth noting that this case is not the first to raise this issue in this Court. In fact, as Respondents acknowledge, the Court has already considered the statutory and constitutional issues raised by Petitioner with regard to 8 U.S.C. §§ 1225 and 1226.[2] *See Requejo Roman*, 816 F.Supp.3d

---

[2] The Court notes that the Second, Sixth and Eleventh Circuit Court of Appeals have analyzed this issue and reached the same conclusion. *See Barbosa da Cunha v. Freden*, -- F.4th--, 2026 WL 1146044 (2nd Cir. 2026); *Lopez-Campos v. Raycraft*, --F.4th--, 2026 WL 1283891 (6th Cir. 2026); *Hernandez Alvarez v. Warden*, -- F.4th--, 2026 WL 1243395 (11th Cir. 2026). The Court also acknowledges that the Fifth Circuit and Eight Circuit Court of Appeals have reached the

1267 (D.N.M. 2026); *see also Velasquez Salazar v. Dedos*, 806 F.Supp.3d 1231 (D.N.M. 2025); *Vega Uribe v. Noem*, No. 2:25-cv-01139-DHU-KRS, 2026 WL 127621 (D.N.M. Jan. 16, 2026); *Mendoza Rivas v. Noem*, No. 2:25-cv-01311 -DHU-KK (D.N.M. Feb.3, 2026); *Garcia Sanchez v. Noem*, No. 2:25-cv-01293-DHU-SCY (D.N.M. Feb. 5, 2026); *Chen v. Unknown Warden*, No. 1:26-cv-00125-DHU-JFR (D.N.M. Feb. 19, 2026); *Castellanos Haro v. Noem*, No. 2:26-cv-00175-DHU-LF (D.N.M. Feb. 26, 2026). Because the facts here are not materially different than those that this Court analyzed in previous cases, the Court's conclusion is the same. Petitioner, who entered the United States over eleven years ago, was arrested inside the United States after entering, and was released by ORR, is properly detained pursuant to 8 U.S.C. § 1226. For a detailed account of the Court's reasoning on this issue, see *Requejo Roman*, 816 F.Supp.3d 1267.

**C. Immediate Release Is the Appropriate Remedy**

While Petitioner is entitled to a bond hearing while detained, such a remedy would not adequately address the most concerning violation present in this case—Respondents' initial re-detention of Petitioner without due process of law. *See, e.g.*, *E.A.T.-B. v. Wamsley*, 795 F.Supp.3d 1316, 1324 (W.D. Wash. 2025) ("[A] post-deprivation hearing cannot serve as an adequate procedural safeguard because it is after the fact and cannot prevent an erroneous deprivation of liberty.").

Several courts analyzing similar facts, including this one, have found that immediate release is the appropriate remedy when the Government's re-detention of someone previously released by ORR violates their due process rights. *See, e.g.*, *Garcia-Domingo v. Castro*, 806 F.Supp.3d 1246 (at TRO stage, ordering immediate release of petitioner previously released by

---

opposite conclusion. *See Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, --F.4th--, 2026 WL 819258 (8th Cir. 2026). The Tenth Circuit Court of Appeals has not yet addressed the issue.

the ORR and re-detained without a pre-deprivation hearing); *Alfaro Herrera v. Baltazar*, No. 1:25-cv-04014-CNS, 2026 WL 91470 (D. Colo. Jan. 13, 2026) (finding release the appropriate remedy to remedy unlawful re-detention of noncitizen previously determined by the ORR not to be a flight risk or danger); *see also Wamsley*, 795 F.Supp.3d 1316 (holding that a noncitizen previously released on an order of recognizance had a liberty interest in his continued release, that the *Mathews* factors required a pre-deprivation hearing before any re-detention, and that the appropriate remedy was release); *Valdez v. Joyce*, 803 F.Supp.3d 213 (S.D.N.Y. 2025) (finding the same); *Faizyan v. Casey*, No. 3:25-cv-02884-RBM-JLB, 2025 WL 3208844 (S.D. Cal. Nov. 17, 2025) (finding, under *Mathews*, that revocation of Petitioner's release on recognizance without an opportunity to be heard deprived him of his due process rights, and ordering his immediate release); *Chipantiza-Sisalema v. Francis*, No. 25 Civ. 5528 (AT), 2025 WL 1927931 (S.D.N.Y. July 13, 2025) (granting noncitizen's request for immediate release when she was re-detained without notice or hearing after previous release on her own recognizance). This Court concludes the same and finds that the only adequate remedy for the due process violation here is Petitioner's immediate release.

## IV.
## CONCLUSION

For the reasons stated above, Petitioner's Petition for Writ of Habeas Corpus (Doc. 1) is **GRANTED**.

**IT IS THEREFORE ORDERED** that Respondents release Petitioner within **twenty-four (24) hours** of this Order and subject him to the same terms as his original release. Unless and until Petitioner's Order of Removal becomes final, Respondents are **RESTRAINED** from re-detaining Petitioner unless they demonstrate, by clear and convincing evidence at a pre-deprivation hearing, that Petitioner is a danger to the community or a flight risk.

**IT IS FURTHER ORDERED** that the parties submit a joint status report to the Court no later than Wednesday, June 3, 2026, confirming Petitioner's timely release.

Finally, because the Court is providing Petitioner with relief in this Order, Petitioner's Emergency Motion for Immediate Release (Doc. 16) is **DENIED AS MOOT**.

**IT IS SO ORDERED.**

HONORABLE DAVID HERRERA URIAS
UNITED STATES DISTRICT JUDGE